IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **C&C CARTAGE, INC. and ALEXIS COLE COCKRELL**, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> **CONTINENTAL INDEMNITY COMPANY, APPLIED RISK SERVICES, INC., APPLIED UNDERWRITERS, INC., and ABC DEFENDANTS 1-10,** <br><br> *Defendants*. | CAUSE NO. 3:23-CV-261-CWR-LGI |

## ORDER

Before the Court is Continental Indemnity Company, Applied Risk Services, Inc., and Applied Underwriters, Inc.'s (collectively "Defendants") *Motion to Dismiss* for Improper Venue under Fed. R. Civ. P. 12(b)(3), or alternatively, for a Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). Upon review, Defendants' *Motion* is granted in part and denied in part.

### I.   Factual and Procedural History

#### A.   Background

Plaintiff C&C Cartage, Inc. ("Cartage") hired two subcontractors—Thornton Construction Company and Prices Tree Service—to clear a right-of-way in Simpson County, Mississippi. Docket No. 1 at 3. On October 16, 2020, John Reid, a Prices Tree Service employee, was injured while working on the right-of-way. Prices Tree Service did not have workers' compensation insurance. Cartage, however, was covered under Continental Indemnity Company's Workers' Compensation and Employer's Liability Insurance Policy (hereinafter

"Continental policy"). *Id.* at 1-1. As such, Reid filed a claim for workers' compensation listing Cartage as his "statutory employer" under Mississippi law. *Id.* at 4.

Reid's claim made its way to Applied Risk Services ("ARS"), which was listed on the Continental policy as the "producer." On February 23, 2023, Julian Avila, Director of Workers Compensation Claims for ARS, mailed Plaintiffs a letter identifying ARS as the "workers' compensation claims service provider for [Continental] for clients participating in [Applied Underwriters' ("AU")] SolutionOne program." *Id.* ARS informed Cartage that it would defend against Reid's claim, but raised concerns as to whether Reid was covered under the Continental policy. Its argument? Because Reid was a subcontractor's employee, not a Cartage employee, ARS would contend that Reid was not covered by the Continental policy. ARS further explained that if the Mississippi Workers' Compensation Commission determined that Cartage was responsible for Reid's claim, ARS would require Cartage to indemnify and reimburse the Defendants for "any and all payments made on the Reid claim as provided in the SolutionOne Agreement." *Id.*

That same day, Cartage received another letter via certified mail from Julian Avila. This time, Julian Avila wrote on behalf of Applied Underwriters ("AU") in his capacity as the Director of Workers Compensation Claims.[1] This letter informed Cartage that Reid "was not reported on [Cartage's] payroll to AU and [Cartage] is therefore solely responsible for this claim." *Id.* It explained that, under the SolutionOne Service Agreement ("SS Agreement") between Cartage and AU, Cartage "was obligated to report all of its employees on its payroll and pay workers' compensation premium." *Id.* AU then attached a "Reimbursement

---

[1] The Continental policy does not mention AU, but AU operates from the same address as ARS. All three are affiliated in some way.

2

Agreement" and told Cartage that it must execute said agreement within seven days to "avoid litigation." *Id.*

On March 14, 2023, Cartage's counsel sent a letter to Defendants. Docket No. 1-5. Cartage explained that under Mississippi Code § 71-3-7, Cartage was Reid's statutory employer. Therefore, Reid's claim was covered by the Continental policy. It then asked the Defendants to provide Cartage with the policy provision or exclusion which they believed supported their position that only employees listed on Cartage's payroll are covered by the Continental policy. *Id.* Cartage sent a follow-up letter on March 28, 2023. Docket No. 1-6. It seems Defendants never responded to Cartage's letters.

### B.     Plaintiffs' Complaint

Cartage and its owner, plaintiff Alexis Cole Cockrell (together, "Plaintiffs"), filed this action on April 18, 2023. Docket No. 1. Their Complaint asserted the following claims:

a. Breach of the duty of good faith and fair dealing;[2]
b. Civil Conspiracy and Collusion;
c. Violation of 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations Act); and
d. Intentional and Negligent Infliction of Emotional Distress.

Plaintiffs further sought a declaratory judgment asking the Court to adjudicate Plaintiffs' rights under the Continental policy and any other relevant contract.

### C.     Defendants' Motion to Dismiss

Defendants ask the Court to dismiss Plaintiffs' action on two grounds. Docket No. 9. First, they argue that the Southern District of Mississippi is not the proper venue for this litigation. Defendants contend that a forum selection clause in the SS Agreement requires this

---

[2] It is not entirely clear whether Plaintiffs are pursuing a bad faith claim against the Defendants.

case to proceed in Nebraska. *Id.* at 2. Second, Defendants contend that Plaintiffs' RICO claim is insufficient as a matter of law because they fail to plead an enterprise and a pattern of racketeering activity giving rise to RICO liability. Docket No. 10 at 8.

## II. Legal Standards

### A. Improper Venue – Rule 12(b)(3)

A party may move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). Once a defendant objects to venue under this Rule, plaintiffs bear the burden to "come forward with evidence showing venue is proper in the judicial district in which the action was brought." *Deepwell Energy Servs., LLC v. Sims*, No. 2:18-CV-53-KS-MTP, 2018 WL 9963839, at *3 (S.D. Miss. July 16, 2018). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). In making its determination, a court may consider evidence beyond that which is alleged in the complaint and its attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).

### B. Failure to State a Claim – Rule 12(b)(6)

The Court may dismiss an action for Plaintiffs' "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, Plaintiffs have an obligation to plead factual allegations that "provide [the] grounds of [their] entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court accepts as true "all well-pleaded facts and construe[s] the allegations in the light most favorable to the plaintiff," the Court will not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Lewis v. Danos*, 83 F.4th 948, 953 (5th Cir. 2023). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

4

*Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *2 (5th Cir. June 5, 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   Discussion

For the reasons that follow, the Court rejects Defendants' Rule 12(b)(3) argument because the Southern District of Mississippi is a proper venue under 28 U.S.C. § 1391(b)(2), but grants Defendants' Rule 12(b)(6) argument for Plaintiffs' failure to state a RICO claim.

### A.   The Southern District of Mississippi Is a Proper Venue Under Rule 12(b)(3).

#### 1.   The Forum Selection Clause Is Presently Inapplicable.

The existence of a forum selection clause, and thus the issue of venue, turns on whether the SS Agreement or the Continental policy controls. That means a brief description of the SS Agreement is necessary.

Cartage and AU signed the SS Agreement on June 27, 2014. Docket No. 9-1. Neither ARS nor Continental signed the SS Agreement. It automatically renewed for one-year terms, which eventually stretched to encompass the date range relevant to this suit.

The stated purpose of the SS Agreement is to provide the scope of the "administrative functions" AU agreed to perform for Cartage. *Id.*; *see also* Docket No. 15 at 7.  Paragraph 1 of the SS Agreement states "Insurance coverages from Our insurance affiliates are only available to Covered Employees." *Id.* It defines "Covered Employees" as anyone Cartage reports on its payroll to AU. Paragraph 2 delineates AU's duties under the SS Agreement. Those duties include paying employment taxes, maintaining records in compliance with federal and state law, and monitoring and causing compliance with FMLA, etc. *Id.*

Relevant here is the forum selection clause in the SS Agreement. It provides:

> ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF, RELATED TO OR BASED UPON THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MUST ONLY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF NEBRASKA IN EACH CASE LOCATED IN OMAHA AND THE COUNTY OF DOUGLAS . . . .

Docket No. 9-1 at 3.

The SS Agreement makes clear that the "Agreement shall not be valid or effective unless and until executed by an officer of Applied Underwriters, Inc. with its official seal affixed." *Id.* at 5. Defendants' copy of the signed SS Agreement contains an official seal. Plaintiffs assert, though, that the copy of the SS Agreement they received from Defendants on March 10, 2023, arrived sans seal. Docket No. 15 at 2. They have attached the document. Docket No. 14-1.

Urging that the SS Agreement was properly executed, Defendants argue that the forum selection clause must be enforced because the claims in this lawsuit are related to the SS Agreement. Plaintiffs, of course, contend that the contract was never properly executed, and that even if it was, the forum selection clause applies only to litigation based upon the SS Agreement. Docket No. 15 at 2. As Plaintiffs put it, "none of Plaintiffs' causes of action are based on any claim that AU [the signatory of the SS Agreement] has breached or failed to perform under the SolutionOne Agreement."

On review, the Court agrees with the Plaintiffs.

Defendants have failed to point to any provision or clause in the SS Agreement to support their contention that it applies to insurance coverage disputes. The Continental policy, rather, states that "[t]he only agreements relating to this insurance are stated in this policy." Docket No. 1-2 at 9. Neither the SS Agreement or the Continental policy mentions

6

the other "either implicitly or expressly." *Taylor v. Investors Assocs.*, 29 F.3d 211, 213 (5th Cir. 1994). In fact, AU's delineation of duties in the SS Agreement does not mention the Continental policy, specifically, or workers' compensation insurance, generally. Docket No. 9-1 at ¶ 2. AU's duties instead arise from "a straightforward payroll/ personnel service agreement." Docket No. 15 at 8. And any ambiguity suggesting otherwise is "construed against the drafting party." *Songcharoen v. Plastice & Hand Surgery Assocs.*, 561 F. App'x 327, 339 (5th Cir. 2014).

For that matter, even if this Court found that Plaintiffs' claims are controlled by or arise under the SS Agreement, it is unclear that the SS Agreement is enforceable. The SS Agreement expressly provides that it "shall not be valid and effective unless and until executed by an officer of Applied Underwriters, Inc. with its official seal affixed." Docket No. 9-1 at 5. Defendants' copy of the signed SS Agreement contains an official seal. But the seal was absent from the SS Agreement Plaintiffs received from Defendants on March 10, 2023. Docket No. 15 at 2. The absence of an affixed seal might render the SS Agreement invalid.

Plaintiffs further explain that they "could have prosecuted [their] declaratory judgment and extra-contractual claims directly against Continental" and "could, logically, dismiss AU as a defendant." Docket No. 15 at 12.

In sum, the Court declines to apply a forum selection clause that is contained in an unrelated document—signed by the wrong Defendant—which may not have been a binding contract on the days in question. Because a factual dispute exists as to whether the SS Agreement was affixed with an official seal, though, the Court will allow the parties to take up discovery on that issue.

Next, the Court considers whether venue in the Southern District of Mississippi is proper under 28 U.S.C. § 1391.

## 2. Venue is Proper in the Southern District of Mississippi.

When assessing a Rule 12(b)(3) motion, courts turn to 28 U.S.C. § 1391 to determine whether venue is "improper" or "wrong." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Under § 1391, venue is proper when a case falls within one of three categories. Relevant here is the second category: venue is proper in the judicial district where a substantial part of the events giving rise to the claim(s) occurred. 28 U.S.C. § 1391(b)(2). When a civil action falls within any of the three categories provided in § 1391(b), venue is proper. If not, the Court may dismiss pursuant to Rule 12(b)(3) or transfer the matter to any district where the case could have been brought. *Id.* § 1406(a).

Where a contract was negotiated, executed, or where it was to be performed is relevant to the Court's application of § 1391(b)(2). *Homolka v. Clark*, No. 3:08-CV-99-DPJ-JCS, 2009 WL 10670973, at *2 (S.D. Miss. Jan. 20, 2009).

Venue is proper in the Southern District of Mississippi because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Plaintiffs allege that "the acts and omission" that serve as the basis of their cause of action "occurred in whole or in part in Simpson County, Mississippi." Docket No. 1 at 2. The Continental policy "covers all . . . workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A." Docket No. 1-2 at 9. The policy listed Cartage's address in Magee, Mississippi as an insured location. Docket No. 1-1 at 1. Magee is in Simpson County. The accident occurred in Simpson County. Simpson County is located in the Southern District of Mississippi.

8

Taking Plaintiffs' allegations as true, the Court finds that venue is proper in the Southern District of Mississippi because it is where a substantial part of the events giving rise to the claim occurred.

### B. Plaintiffs Failed to Plead their RICO Claim.

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful for "any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO further makes it unlawful to conspire to violate § 1962(c) of the Act. *Id.* § 1962(d). To successfully state a claim under § 1962(c), Plaintiffs must prove the existence of an enterprise and a pattern of racketeering. *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 424 (5th Cir. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).

The Court finds that Plaintiffs' have failed to plead a pattern of racketeering activity actionable under RICO, and thus need not address whether an enterprise existed.

A racketeering activity is "any act . . . indictable under specified federal statutes," *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 511 (5th Cir. 1990) (citing 18 U.S.C. § 1961(1)), including mail fraud, 18 U.S.C. § 1341. RICO "requires at least two acts of racketeering activity" to prove a pattern of racketeering activity. 18 U.S.C. § 1961(5).

Despite citing this language verbatim, Plaintiffs allege only a single act. They claim that Defendants mailed Cartage two letters. But Plaintiffs' RICO argument grounds itself only in AU's letter. They say: "With regard to RICO, however, the plaintiffs are focused upon the activities—pursued through registered mail—that attempt to threaten and extort a reimbursement obligation that does not exist." *See* Docket No. 15 at 17. AU's letter informed

9

that Defendants were not responsible for Reid's claim and threatened litigation unless Cartage executed a Reimbursement Agreement. ARS' letter merely flagged that Reid might not be covered by the Continental policy and informed Plaintiffs' that, if so, Defendants would ask Plaintiffs for reimbursement. Such communication represents ordinary business conduct.

Plaintiffs acknowledge that, in drafting RICO, Congress was concerned "with long-term criminal activity rather than single, isolated acts." Docket No. 15 at 20. They nevertheless claim that Defendants persist in racketeering activities by not rescinding their communications. Even still, the communication at issue constitutes a single act. Congress made clear that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes." *Sedima*, 473 U.S. at 496 n.14. Unlike criminal *acts*, a single *act* does not create a pattern of racketeering. *Montesano*, 818 F.2d at 424. Plaintiffs' inability to show more than the single incident of alleged mail fraud does not plead a pattern of racketeering.

### IV.   Conclusion

Defendants' *Motion to Dismiss* pursuant to Rule 12(b)(3) is **DENIED WITHOUT PREJUDICE**. The parties may take discovery on whether the SS Agreement was affixed with an official seal. Finding that Plaintiffs have failed to state a RICO claim, Defendants' *Motion to Dismiss* pursuant to Rule 12(b)(6) is **GRANTED**.

**SO ORDERED**, this the 29th day of March, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE