IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **C&C CARTAGE, INC. and ALEXIS COLE COCKRELL,** | |
| *Plaintiffs*, | |
| v. | CAUSE NO. 3:23-CV-261-CWR-LGI |
| **CONTINENTAL INDEMNITY COMPANY; APPLIED RISK SERVICES, INC; APPLIED UNDERWRITERS, INC., and ABC DEFENDANTS 1-10,** | |
| *Defendants*. | |

**ORDER**

Before the Court is C&C Cartage, Inc. and Alexis Cole Cockrell's (collectively "Plaintiffs") motion to dismiss the counterclaims of Continental Indemnity Company, Applied Risk Services, Inc., and Applied Underwriters, Inc. (collectively "Defendants"). Docket No. 26. Also before the Court is Plaintiffs' motion to amend their complaint. Docket No. 30. For the reasons that follow, Plaintiffs' motion to dismiss will be granted in part and denied in part, and their motion to amend will be denied.

**I.  Background**

Cartage is a trucking company that operates out of Simpson County, Mississippi. It paid Continental for workers' compensation coverage for a one-year period running from June 2020 to June 2021.

In October 2020, Cartage worked as a subcontractor on a project to clear a right-of-way in Simpson County. It hired Prices Tree Services ("PTS") to remove trees as part of the

project. While working on the project, PTS worker John Reid, III was run over by another PTS worker. Cartage had not previously identified PTS or Mr. Reid as a covered employee on its workers' compensation policy.

Mr. Reid filed a workers' compensation claim and listed Cartage as his "statutory employer."[1] Continental then contacted Cartage. Cartage denied knowing Mr. Reid and could not confirm whether he was an employee. In response, Continental launched an investigation to determine whether Mr. Reid was covered under Cartage's policy.

Continental's investigation revealed that PTS did not have workers' compensation coverage, and that Mr. Reid was an "off-the-book" employee. In other words, PTS had paid Mr. Reid in cash. Because PTS lacked insurance, Mississippi law considered Mr. Reid to be Cartage's statutory employee—which meant he was entitled to benefits under *its* policy.

Continental settled Mr. Reid's workers' compensation claim. It then contacted Plaintiffs to recoup the $200,000 it expended in resolving Mr. Reid's claim. Plaintiffs denied owing Continental—or the other defendants—the full amount of the funds spent towards Mr. Reid. This litigation followed.

In short, Cartage and its President allege that Defendants breached the contract of insurance by seeking to dump their coverage obligations upon them, the insured(s). Plaintiffs further allege that Defendants inflicted emotional distress on Ms. Cockrell by raising coverage concerns to her and informing her of their intent to pursue litigation. Defendants responded with counterclaims for breach of contract and unjust enrichment. They maintain

---

[1] Mississippi law provides that "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment." MISS. CODE ANN. § 71-3-7(6).

2

that they became liable for Mr. Reid solely because of Cartage's "failure to take the necessary steps to require and insure [workers'] compensation coverage by its subcontractor." Docket No. 25 ¶ 12. Plaintiffs now move to dismiss both counterclaims.

## II.     Legal Standards

### A.     Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss an action for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

"Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the [counter-plaintiff], but [counter-plaintiffs] must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

### B.     Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading with leave of court. It states that the Court should grant leave "when justice so requires." Courts evaluating these motions should ask whether the record demonstrates "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

3

### III.     Discussion

#### A.     Motion to Dismiss

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

#### 1.     Continental has plausibly alleged that Cartage breached the policy.

In this counterclaim, Defendants allege that Plaintiffs breached the contract of insurance by failing to "maintain accurate records of payroll, remuneration, and other employee information relevant for premium calculation and claims processing." Docket No. 25 ¶ 16. Because Continental and Cartage are the named parties to this policy, the allegations of this counterclaim involve those two parties only.

Cartage does not believe this states a claim. According to Cartage, Mr. Reid was a statutory employee only because PTS lacked workers' compensation coverage. Docket No. 27 at 6. Cartage maintains that its records were correct before Mr. Reid's accident and that Continental has not sought to audit its records—as the policy permits—to reflect Mr. Reid's status as a statutory employee. In its view, no breach occurred because it could properly add Mr. Reid to the records at the end of the policy period.[2]

---

[2] Cartage's motion emphasizes its belief that Continental alleged only breach of the policy provision regarding proper recordkeeping. In response, Continental appears to provide additional facts about Cartage failing to assist in the claim investigation process. Because Continental failed to seek leave to amend its counterclaim to allege that Cartage breached an additional duty, the Court will consider these only as additional facts relating to the theory alleged—improper recordkeeping. *See Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 288 (5th Cir. 2023).

To succeed on its breach of contract claim, Continental must prove "the existence of a valid and binding contract" and "that the defendant has broken, or breached it." *Business Comm., Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012).

Viewing the facts in the light most favorable to Continental, it has plausibly alleged that Cartage breached the contract of insurance. Continental's theory of breach relies on the policy provisions entitled "Remuneration" and "Records."

The "Remuneration" provision states that Cartage must pay a premium for its officers and employees along with "all other persons engaged in work that could make [Continental] liable" under workers' compensation laws. Docket No. 26-1 at 26. Cartage, however, was not required to pay a premium for those persons if it provided "proof that the employers of these persons lawfully secured their workers' compensation obligations." *Id.* This in turn relates to the "Records" provision, which required Cartage to "keep records of information needed to compute premiums." *Id.*

Considering these provisions together, the policy required Cartage to maintain records of whether its officers, employees, and subcontracted workers were covered under anyone's workers' compensation policy. If a subcontracted worker was covered through his employer, Cartage could inform Continental and would not have to pay a premium for that individual. But if the subcontracted worker did not have coverage, Cartage was expected to inform Continental so the worker could be included in the final premium calculation. The policy suggests that Cartage was obliged to have a record of each subcontracted worker's coverage status regardless of whether they would be included in the final premium calculation. According to the present pleadings, Cartage did not have a record of Mr. Reid's coverage status and potentially breached the policy by failing to do so.

5

The Court recognizes Cartage's argument that Continental failed to conduct an audit. In Cartage's view, it could have cured any potential breach by including Mr. Reid in the final premium calculation—if Continental had ever commenced an audit. And that may be true: the contract of insurance states that the final premium would not be calculated until after the coverage term ended, so it stands to reason that Continental could have adjusted Cartage's final premium to reflect Mr. Reid's statutory employee status after settling his workers' compensation claim.

Nevertheless, the Court's task at this stage is "to determine whether the [counter-plaintiff] has stated a legally cognizable claim that is plausible, not to evaluate the [counter-plaintiff's] likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). Continental has plausibly alleged that Cartage breached the contract[3] by failing to have a record of Mr. Reid's workers' compensation coverage.[4] Cartage's motion is therefore denied on this ground.

### 2. Continental has not stated an unjust enrichment claim.

"Unjust enrichment applies to situations 'where there is no legal contract' and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Beasley v. Sutton*, 192 So. 3d

---

[3] Cartage seems to believe that its only "duties" under the policy are those outlined in Part Four, "Your Duties If Injury Occurs." Docket No. 26-1 at 25. The Court declines to adopt such a strict reading of the policy. While Part Four clarifies Cartage's obligations in the event of an injury, the policy contains numerous provisions it was bound to throughout the term of coverage.

[4] The contract of insurance states that the premium basis could be determined based on "payroll records" or "the contract price for their services and materials." Docket No. 26-1 at 26. The Court is not aware of the specifics of Cartage's agreement with PTS. At this stage, it is not clear whether Cartage subcontracted with PTS as an entity or if its agreement allocated certain workers. If the latter, it is also unclear whether Cartage could have even obtained the necessary information for Mr. Reid since he was considered "off the books." The Court need not resolve this question as it is not central to whether Continental has plausibly alleged its counterclaims.

325, 332 (Miss. Ct. App. 2015) (quoting *Ground Control LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 371 (Miss. 2013)). Mississippi law bars a party from claiming unjust enrichment when there is a legal contract. *See Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005).

Because Cartage's alleged breach stems from the policy, which of course is a contract, unjust enrichment is not a proper cause of action. Cartage's motion is granted on this issue.

B. Motion to Amend

Next, Plaintiffs seek to amend their complaint with additional allegations of breach of the duties of good faith and fair dealing. Plaintiffs' request stems from actions they believe Defendants took to threaten and intimidate them. Docket No. 31 at 3. They assert that Defendants (1) filed counterclaims, and (2) submitted an unlawful offer of judgment solely for intimidation. Defendants respond that they have simply employed litigation tools.

The Court can quickly resolve the first part of Plaintiffs' motion. Continental has plausibly alleged a counterclaim for breach of contract. That finding is enough to sustain Defendants' decision as appropriate and ordinary litigation conduct. Defendants' offer of judgment, however, requires a closer look.

The Federal Rules of Civil Procedure allow "a party defending against a claim [to] serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). "If the judgment that the offeree finally obtains is more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." *Id.* at 68(d).

"The purpose of Rule 68 is to encourage the settlement of litigation by providing an incentive to settle 'in those cases in which there is a strong probability that the plaintiff will obtain a judgment but the amount of the recovery is uncertain.'" *La. Power & Light Co. v.*

7

*Kellstrom*, 50 F.3d 319, 333 (5th Cir. 1995) (quoting *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 (1981)). "The Rule prompts [the] parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success on the merits." *Basha v. Mitsubishi Motor Credit of Amer., Inc.*, 336 F.3d 451, 455 (5th Cir. 2003). The critical feature of the rule is that it "*allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued.*" *Marek v. Chesney*, 473 U.S. 1, 6 (1985) (emphasis in the original). In other words, as the Court explained, the concerns of the drafters of the rule "was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants." *Id*. (emphasis in the original).

In this case, Defendants' offer of judgment required Plaintiffs to accept in writing "$50,000.00 within fourteen (14) days of service." Docket No. 28 at 1. It then continued,

> If this offer is not accepted within fourteen (14) days and judgment finally obtained by the Plaintiffs is less than the amount of this offer, then the Plaintiffs, in accordance with Rule 68, will be obligated to pay all of the Defendants' cost incurred, including expert fees and expenses, cost of all subpoenas, travel expenses and attorney's fees and expenses, after the making of this offer.

*Id.*

Plaintiffs chose not to accept the offer. They then moved to amend their complaint based on their belief that this offer not only exceeded the bounds of Rule 68 but was part and parcel of Defendants' intimidation and bullying scheme. They specifically maintain that the Rule disavows awarding expert's fees or attorney's fees as part of "costs." Plaintiffs do not cite to caselaw supporting their position. In response, Defendants say, "[t]here is no claim for filing an offer of judgment in litigation." Docket No. 33 at 2.

Plaintiffs have failed to put forth any caselaw which penalizes Defendants in tort for using the Federal Rules of Civil Procedure.[5] Whether the Defendants Rule 68 offer of judgment is valid or otherwise defective only matters because Plaintiffs rejected the offer. Having done so, if, after trial, plaintiffs' judgment is less than $50,000, the parties can then fight about what costs can be assessed against the Plaintiffs. Fed. R. Civ. P. 68(d). The question will be whether "all costs properly awardable in an action," *Marek*, 473 U.S. at 9, includes "expert fees and expenses, cost of all subpoenas, travel expenses and attorney's fees and expenses." Docket No. 28 at 1.

The motion to amend is denied.

### IV.   Conclusion

The Court recognizes that the parties have continued pursuing their case while the instant motions were under consideration. They have engaged in discovery and briefed their dispositive motions. Thus, they should be aware of the strengths and weakness of their respective positions. As the parties await a ruling on the next motions, the Court will simply remind them that they are in control of their case and can resolve it at any time without need for further litigation.

Plaintiffs' motion to dismiss is granted in part and denied in part, while their motion to amend is denied.

**SO ORDERED**, this the 3rd day of March, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[5] Though the Court is not persuaded that Defendants' actions warrant amending the pleadings, there are other vehicles for Plaintiffs to seek relief under the Federal Rules of Civil Procedure. Should Plaintiffs wish for the Court to consider additional arguments, they may brief them—with caselaw—at the appropriate time.